

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| BERNADETTE STERNE MENO, | DOMESTIC CASE NO. DM0257-21 |
| Plaintiff, | BY: |
| vs. | |
| ANTHONY JESSE DUENAS MENO, | **AMENDED[1] DECISION AND ORDER RE AMENDED MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT** |
| Defendant. | |

This matter is before the Honorable Dana A. Gutierrez upon an Amended Motion for an Order to Show Cause re Contempt and for Contempt ("Amended Motion for OSC"). The Court held evidentiary hearings in this matter on March 18, 2024, April 19, 2024, and May 23, 2024. Present at the hearings were Plaintiff Bernadette S. Sterne ("Sterne")[2] with counsel Attorney Charles H. McDonald and Defendant Anthony Jesse Duenas Meno ("Meno") with counsel Attorney Seaton M. Woodley. Based on the arguments, testimony, and applicable Guam law, the Court issues the following Decision and Order.

## BACKGROUND

On June 17, 2021, Sterne filed a Complaint for Divorce and a Marital Settlement Agreement ("MSA"), which was signed by Sterne and Meno on June 16, 2021. On July 9, 2021, the Court issued an Interlocutory Judgment of Divorce (the "Interlocutory Judgment")

---

[1] This Decision and Order amends the Court's August 21, 2024 Decision and Order Re Amended Motion for Order to Show Cause Re Contempt, in order to abbreviate the names of the children that were minors at the time this case was initiated, and to correct the date of birth of Anthony Jesse Sterne Meno.

[2] When Sterne initiated this matter on June 17, 2021, her name was Bernadette Sterne Meno. However, pursuant to the parties' Marital Settlement Agreement, Sterne was "restored to her maiden name, i.e., Bernadette S. Sterne." MSA at 4, § 13.

incorporating the MSA and a Final Decree of Divorce reaffirming and incorporating the Interlocutory Judgment and MSA.

On March 20, 2023, Sterne filed a Motion for Order to Show Cause ("Motion for OSC"), alleging that Meno has failed to complete certain actions which are required by the MSA. On December 5, 2023, the Court issued an Order to Show Cause Why Meno Should Not be Held in Contempt of Court ("Order to Show Cause").[3] On December 18, 2023, Meno filed his Opposition to Sterne's Motion for OSC.

On March 18, 2024,[4] the Court held an Evidentiary Hearing in this matter and then issued an Order After Hearing, ordering further briefing regarding the interpretation of the language in the MSA. In particular, the Court ordered that the parties brief the meaning of the language found in Paragraph 11 of the MSA, which states, in part: "[Sterne] and [Meno] shall share school tuition costs, medical costs and other expenses related to the children of the marriage" ("Paragraph 11"). The Court ordered that the further briefing should outline what types of costs and expenses are included, excluded, or limited by the language of the MSA.

In response, and with leave of Court pursuant to the discussions at the March 18, 2024 hearing, Sterne filed Amended Motion for OSC on March 22, 2024. In her Amended Motion for OSC, Sterne seeks to enforce Paragraph 11 as well as three other provisions in the MSA: (a) Paragraph 4, which states in part that Meno shall quitclaim and assign his interest in the family

---

[3] The delay between Sterne's Motion and the Court issuing its Order to Show Cause was due, in part, to Sterne's difficulty serving Meno with the Motion for OSC. Further, at a hearing on August 24, 2023, the Court ordered Sterne to submit a proposed Order to Show Cause, which Sterne did not file until November 15, 2023.

[4] The Court first held an Order to Show Cause Hearing on December 15, 2023. However, at that hearing, Meno requested additional time to obtain an attorney, which the Court granted. Attorney Woodley entered his appearance on December 18, 2023. The Court then held a Continued Order to Show Cause Hearing on January 25, 2024, where the parties discussed the need for further documentation and an Evidentiary Hearing.

home to the parties' son, Anthony Jesse Sterne Meno (DOB: 08/07/2002) ("A.J.S.M."); (b) Paragraph 5, which states in part that Meno shall make a good faith effort to obtain a loan to pay off the Coast 360 debt (the "Debt") on the loan on Meno's vehicle, a Yukon Denali, and that Meno shall make all loan payments on the debt prior to their due dates; and (c) Paragraph 9, which states that Meno shall maintain the medical and dental insurance policies until the children of the marriage turn eighteen (18) or while they are in college.

Meno filed a Reply Brief on April 4, 2024 ("Response to Amended Motion"). Sterne filed a Reply to Meno's Reply Brief on April 12, 2024. The primary contention between Sterne's and Meno's positions regarding Paragraph 11 is that Sterne argues that the MSA requires the parties to support the children of the marriage "whether the children are minor children or adult children," while Meno argues that he "did not agree to pay for any post high school education, specifically not for college tuition or expenses or living costs incurred by adult students." Amended Motion for OSC at 6; Response to Amended Motion at 5. Additionally, Meno argues that certain expenses sought in Sterne's Amended Motion for OSC are "absurd and outrageous," including, for example, an expense for the "boys car for college," as Meno states that he did not agree to such an expense. Response to Amended Motion at 4-5.

At the April 19, 2024 Evidentiary Hearing, upon request of the parties, both parties began to present evidence in support of their positions regarding how to interpret Paragraph 11 of the MSA. For example, the parties argued whether Meno led Sterne to believe that he was represented by counsel when he signed the MSA, which Meno contends is relevant to the Court's determination of whether it should construe the MSA against the drafter. In support of each side's arguments,

3

counsel for both Sterne and Meno called their respective clients to testify.[5] Min. Entry, 10:04-10:13 AM (April 19, 2024).

However, after both attorneys called the parties to testify, Sterne raised that the Court should not consider any extrinsic evidence to the MSA unless the Court finds that the MSA is ambiguous. Min. Entry, 10:50 AM (April 19, 2024).

Based upon discussion at the April 19, 2024 hearing, the Court issued a second Order After Hearing on April 22, 2024, permitting the parties to brief their positions regarding which evidence the Court may consider at this time to interpret the meaning of the MSA. On April 29, 2024, Sterne submitted her Supplemental Brief and Sterne's Affidavit. On May 2, 2024, Meno filed his Supplemental Response, Declaration of Meno, and Declaration of Attorney ("Woodley's Declaration").

Finally, the Court held a continued Evidentiary Hearing on May 23, 2024, and the Court took the matter under advisement at that hearing.

## DISCUSSION

As stated, Sterne seeks to enforce four provisions in the MSA, requiring Meno to complete four actions: (1) quitclaim deed the family home to A.J.S.M.; (2) maintain dental insurance for the children of the marriage and reimburse Sterne for her costs paid in providing the insurance after Meno canceled it; (3) pay for the Debt on Meno's car loan; and (4) pay for all tuition and expenses contemplated in Paragraph 11. *See generally* Amended Motion for OSC. Sterne argues that Meno is in contempt for violating the MSA by failing to complete these actions. *Id.*

---

[5] At the April 19, 2024 hearing, the Court also admitted Meno's Exhibit A in support of his position that he was not represented by counsel when he signed the MSA. The Court admitted the exhibit upon Sterne's non-opposition. However, later in the hearing, Sterne stated that she withdrew her non-opposition, and objected to the admission. Min. Entry, 10:48 AM (April 19, 2024). The Court noted that the exhibit had already been admitted, but that it would allow Sterne to brief her position. *Id.* at 10:48 AM.

Marital settlement agreements are subject to the principles of contract interpretation. *Cruz v. Cruz*, 2022 Guam 7 ¶ 24. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." 18 GCA § 87105. Guam follows the "traditional approach" to contract interpretation, meaning that the Court must "look to the four corners of the contract and determine whether, as a matter of law, any ambiguity exists." *Wasson v. Berg*, 2007 Guam 16 ¶¶ 11, 16. "A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 14. If no ambiguity exists, then the Court may not resort to extrinsic evidence to determine the intention of the parties. *Wasson*, 2007 Guam 16 at ¶ 16. However, if the Court finds that an ambiguity exists, then it may turn to extrinsic evidence to clarify or resolve the ambiguity. *Id.*

"Disobedience of any lawful judgment, order, or process of the court" is contempt of court. 7 GCA § 34101. Because the Court ordered that the Final Decree of Divorce incorporate the MSA, violations of the MSA are punishable by contempt of court. *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8 (stating divorce decrees are "ultimately backed up by the court's power of contempt."). The elements of contempt are generally: (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful failure to comply with the order. *Lamb v. Hoffman*, 2008 Guam 2 ¶ 44.

### 1. Meno Is Not in Contempt for Failing to Quitclaim and Assign His Interest in the Family Home to A.J.S.M.

The MSA states "[Meno] shall quitclaim and assign all of his interest in the family home to his son, [A.J.S.M.]." MSA at 2, ¶ 4. It is undisputed that the MSA is valid and that Meno signed the MSA and was aware of the Court's order to comply with its provisions. Further, Meno does not argue that he was unable to quitclaim and assign his interest in the family home to A.J.S.M. Therefore, the first three elements of contempt—a valid order, knowledge of the order, and ability

to comply with the order—are met.

However, at the April 19, 2024 Evidentiary Hearing, Attorney Woodley stated that he asked Attorney McDonald to bring the deed to that hearing for Meno to sign, but that Attorney McDonald did not bring the deed. Min. Entry, 9:23 AM (April 19, 2024). Then, according to Woodley's Declaration, Attorney Woodley picked up an unsigned Deed of Gift on April 19, 2024 from Attorney McDonald for Meno's signature, but the names on the deed were inaccurate, and thus Meno did not sign it.[6] Woodley's Declaration at 1-2. Finally, at the May 23, 2024 Evidentiary Hearing, Meno informed the Court that he received and signed a deed with the corrected names on or around the week of May 20, 2024. Min. Entry, 1:42 PM (May 23, 2024).

Sterne stated that, although Meno has now signed the deed, she continues to pursue her request that the Court find Meno in contempt for failing to sign the deed previously. *Id.* at 1:43 PM. In addition to Sterne's argument that Meno was obligated to sign the deed prior to Sterne bringing a motion for order to show cause, Sterne also argued that the deed is still not properly perfected because it requires the signature of the parties' son, A.J.M.S. *Id.* at 1:46 PM.

In response, Meno argued that Attorney McDonald never presented a deed to Meno to sign, and that Meno believed that he assigned his rights to the family home when he signed the MSA. *Id.* at 2:15 PM. Sterne did not challenge the allegation that the first time a deed was ever presented to Meno to sign was in or around May 2024.

The Court finds that Meno did not willfully fail to comply with the MSA by failing to draft and execute a deed. Meno claims that he believed he assigned his interest in the property when he

---

[6] The MSA states that Meno shall quitclaim and assign his interest in the home to the parties' son, Anthony Jesse Sterne Meno. Attorney Woodley attached to his Declaration a copy of the deed that Attorney McDonald provided him on April 19, 2024. The deed lists the grantee as "Anthony *James* Sterne Meno." Woodley's Declaration at Ex. A (emphasis added). As such, the Court agrees that the deed was inaccurate.

signed the MSA. The Court notes that the MSA does not contain the procedure for Meno to quitclaim his interest or the time period in which he was expected to quitclaim his interest. Based on the information before the Court, it does not appear that he was unwilling to sign a deed or deed the property to his son. Further, he was willing to sign on the first instance that he was presented with a deed containing the correct name of this son. Moreover, whether A.J.M.S. has signed the deed is not within Meno's control. Therefore, at this time, the Court declines to hold Meno in contempt for failing to quitclaim and assign his interest in the family home to A.J.M.S.

## 2. The Court Finds Meno In Contempt of Court For Noncompliance with Two Provisions of the MSA

### a. Meno Is in Contempt for Failing to Provide Dental Insurance for the Children of the Marriage

The MSA states Meno "shall maintain the medical and dental insurance policies in full force and effect for the benefit of all the children of the marriage until they are 18 unless the children are in college in which case [Meno] shall maintain coverage." MSA at 4, ¶ 9.

Sterne argues that the "dental coverage on Guam for all three children of the marriage has been canceled by [Meno, and Sterne] now provides the dental coverage on Guam for the three children of the marriage." Amended Motion for OSC at 3-4.[7]

Despite ample opportunity to do so, Meno never denied that he canceled the children's dental insurance nor did he provide any reason to indicate that he was unable to provide dental insurance. At the April 19, 2024 hearing, Meno stated that he did not need to respond in writing to the allegation that he failed to provide dental insurance for his children. However, upon further discussion, the Court permitted Meno to address the issue in his Supplemental Response. Meno

---

[7] While the MSA provides that Meno provide medical and dental insurance for the children of the marriage, Sterne did not raise any concerns regarding medical insurance. Instead, the Amended Motion for OSC only alleges that Meno failed to provide dental insurance.

filed his Supplemental Response but did *not* address the issue of insurance. Meno also never disputed the allegation at any of the evidentiary hearings.

Therefore, because the MSA is a valid court order which Meno was aware of, and because Meno willfully failed to comply with the MSA and provided no evidence that he was unable to comply, the Court finds him in contempt for failing to provide dental insurance for the children of the marriage.

Meno shall immediately comply with all provisions of the MSA, including that he must obtain dental insurance for the children of the marriage while they are minors or in college.[8] Additionally, Meno shall reimburse Sterne for any costs to provide dental insurance since the MSA took effect.

### b. Meno Is in Contempt for Failing to Pay the Debt on His Vehicle

Paragraph 5 of the MSA states, in relevant part:

> The community debts of the marriage shall be assigned as follows: . . . . **To [Meno]:** Loan on 2018 Yukon Denali with Coast 360 in the name of [Sterne]. [Meno] shall make a good faith effort to obtain a loan to pay off the debt at Coast 360 which is in the Wife's name. [Meno] shall make all loan payments prior to due date and he shall present proof of payment to Wife via email or text communication by the due date of the loan.

MSA at 3, ¶ 5.

Sterne argues that Meno has made two monthly payments totaling $669.16 to Coast 360 to pay off the Debt for his vehicle, but that Sterne has paid $22,082.28 on the Debt and that a payoff balance of $14,898.76 remains. Amended Motion for OSC at 3. Sterne alleges that "[Meno] has

---

[8] At the April 19, 2024 Status Hearing, the parties briefly discussed that the term "in college" may or may not be limited (for example, depending on the age of the child or the program in which they are enrolled). However, the Court need not address that issue at this time for purposes of the medical and dental insurance because Meno does not dispute whether any of his children are currently "in college."

since failed, refused and continues to fail and refuse to obtain a loan to pay off the debt or to make the required monthly payments as required in the MSA." *Id.*

Meno agrees that he has not obtained a loan and has not made all payments toward the Debt. Min. Entry, 2:42 PM (May 23, 2024). However, Meno argues that "[p]aying this loan was contingent to [Sterne] paying off [Meno's] personal loan to Coast 360 Federal Credit Union which is also listed in paragraph 5 of the MSA." Response to Amended Motion at 7. Meno states, "[f]failure of [Sterne] to pay on [Meno's] loan caused the credit union to deny further credit to [Meno] as his debt service was overextended." *Id.*

In response to questions regarding Meno's efforts to obtain a loan, Meno testified that he inquired with Coast 360 about acquiring a loan to pay off the Debt, but that Coast 360 informed him that he was overextended. Min. Entry, at 2:39 PM (May 23, 2024). Meno did not recall who he attempted to contact at Coast 360; he only made one attempt to obtain a loan since 2021; he did not attempt to take out a loan at any other bank; and he did not complete a loan application. *Id.*

First, although Meno argues that Sterne also failed to pay a debt and therefore the "Court should leave the parties where they stand on this issue without involvement," the current Amended Motion for OSC moves the Court to analyze *Meno's* obligations pursuant to the MSA. Response to Amended Motion at 8. Further, Paragraph 5 of the MSA is not ambiguous, and therefore the Court shall interpret it within the four corners of the document. In reviewing Paragraph 5 in conjunction with the other terms of the MSA, Meno's requirement to pay off the Coast 360 Debt is not contingent on Sterne first paying off Meno's loan. Likewise, Sterne's obligation to pay up to $50,000.00 on Meno's personal loan at Coast 360 is not contingent on Meno paying for the Coast 360 Debt. Therefore, whether Sterne paid off Meno's loan is irrelevant to the Court's consideration regarding Meno's alleged contempt in failing to pay the Debt on his vehicle.

Second, although Paragraph 5 indicates that Meno shall make a good faith effort to obtain a loan to pay off the Debt, it also states that Meno *shall* make the loan payments prior to their due dates. In other words, Meno was and is obligated to pay the Debt regardless of how he pays it—i.e. by obtaining a loan or otherwise. Thus, to avoid being found in contempt of court, Meno would have had to demonstrate that he was unable to make payments toward the Debt, which might include evidence that he made a good faith effort to obtain a loan but would also necessitate a demonstration that he was unable to make the payments as they became due.

Regardless, Meno failed to demonstrate that he made a good faith effort to obtain a loan. As reflected in his testimony, Meno had one conversation with Coast 360 over a period of three years and never filed a loan application. Meno declined to pursue a variety of options within his control that a reasonable person would engage in when seeking to obtain a loan—e.g. filing a loan application, attempting to resolve the issue of overextension with Coast 360, or inquiring with other lenders. *See C&N Corp. v. Kane,* 142 F. Supp. 3d 783 (E.D. Wis. 2015) (stating that a party may avoid being held in contempt if they make a good faith effort to comply with a court's order, meaning they must be "reasonably diligent and energetic in attempting to accomplish what was ordered."). Further, Meno did not provide the Court with any documentation reflecting his inability to pay the loan as payments became due, and, therefore, comply with the terms of the MSA and the Court's order.

Consequently, Meno failed to fulfill his duties as required by Paragraph 5 of the MSA. Because the MSA is a valid order, which Meno was aware of but willfully failed to comply with, and because Meno did not demonstrate that he was unable to comply with the order, the Court holds Meno in contempt for failing to make payments on the Debt on his vehicle. Meno shall immediately comply with the MSA by paying the Debt on his vehicle, either by obtaining a loan

or making payments as they become due. Meno shall also reimburse Sterne for any payments that she has made toward the Debt.

The Court also notes that Meno is not precluded from moving the Court to hold Sterne in contempt for failing to fulfill any obligation that she may owe pursuant to the MSA. However, at this time, the matter of Sterne's alleged contempt is not before the Court, and, therefore, the Court cannot make a determination whether Sterne has failed to comply with the MSA.

### c. The Court Declines to Award Sterne Attorney's Fees

Sterne prayed to be "awarded her attorney fees and costs attendant to the instant [Amended Motion for] OSC and such further relief as this Court deems appropriate." Amended Motion for OSC at 9.

Guam follows the "American Rule" governing attorney's fees. *Fleming v. Quigley,* 2003 Guam 4 ¶ 7. As such, "parties bear their own litigation expenses, including attorney's fees," unless an exception applies. *Id.* "The exceptions to the American rule include where attorney's fees are: (1) authorized by statute, (2) authorized by contract, or (3) allowed in judicially-established equitable circumstances." *Id.*

Sterne admits that the MSA does not provide for attorney's fees. Min. Entry, 9:47 AM (April 19, 2024). The Court agrees that the MSA does not require an opposing party to pay attorney's fees under any circumstances, and in fact the MSA states, "[e]ach party shall pay all their own expenses, court costs, and attorney's fees in the divorce action now pending . . . ." MSA at 3, ¶ 5. Therefore, attorney's fees are not authorized by contract in this matter.

Instead, Sterne argues that the Court should award Sterne her attorney's fees pursuant to the contempt statute. Min. Entry, 9:47 AM (April 19, 2024). Title 7, Guam Code Annotated, Chapter 34 governs contempt of court. Sterne did not point to, and the Court is not aware of, any

provision within that chapter that permits requiring a party in contempt of court to pay attorney's fees. Finally, Sterne did not argue that attorney's fees are allowed in this matter due to judicially-established equitable circumstances. Thus, the Court declines to award attorney's fees to Sterne.

### 3. Paragraph 11 Is Ambiguous

Paragraph 11 states in full:

> [Sterne] and [Meno] shall share school tuition costs, medical costs and other expenses related to the children of the marriage. For School Year 2021-2022, [Meno] shall pre-pay $2,000.00 to Bishop Bumgarner [*sic*] School for his share of the Tuition for [G.J.S.M.] and [Meno] shall pay $4,000.00 to Father Duenas Memorial School for his share of the Tuition for [C.J.S.M.]. Both payments shall be made no later than one week from the signing of this settlement date. For the subsequent school years, [Meno] shall pay his share monthly directly to the schools.

MSA at 4, ¶ 11.

Both parties argue that Paragraph 11 of the MSA is unambiguous. Amended Motion for OSC at 6; Response to Amended Motion at 3. Nevertheless, each party takes a different position on how to interpret Paragraph 11.

Sterne argues that the MSA does not restrict support to minor children of the marriage but should also include college tuition and "other expenses" for the adult children of the marriage. *See* Amended Motion for OSC at 6 and Ex. 2. Sterne supports her position by citing to the only two references to "minor children" in the MSA—in Paragraph 8 and Paragraph 10—and reasoning that when you read those paragraphs together with Paragraph 11, it becomes clear that Paragraph 11 specifically omitted any reference to minor children. *Id.* at 6. Sterne argues that "to restrict support to only minor children would read an additional term into the MSA that would contradict the express language of the MSA and the intent of the parties." *Id.*

Further, Sterne states that Paragraph 2(e) and 2(f) of the MSA define "children of the

marriage" as three children including A.J.S.M., C.J.S.M., and G.J.S.M., and that A.J.S.M. was already an adult at the time the MSA was executed. *Id.* Sterne reasons that this fact evinces that Paragraph 11 contemplated support to be given to the children of the marriage whether they were adults or minors. *Id.*

However, at the April 19, 2024 hearing, in response to the Court's question whether Paragraph 11 contained any limitations regarding what the parties were required to provide for their adult children, Sterne argued that the parties are only required to support the children while they are in college, reasoning that the agreement was made in the context of the parties' plan to send their children to college. *See* Min. Entry, 9:42 (April 19, 2024). Sterne further argued that the Court must read Paragraph 9, which states that Meno shall pay medical and dental insurance for the children while in college, together with Paragraph 11 to show that the parties agreed to pay the tuition, medical costs, and other expenses of the children while they are in college. *Id.*

To the contrary, Meno contends that he "did not agree to pay for any post high school education, specifically not for college tuition or expenses or living costs incurred by adult students." Response to Amended Motion for OSC at 5. Meno supports his position by stating that Paragraph 11 does not mention the word "college," yet the word "college" does appear elsewhere in the MSA—in Paragraph 9. *Id.* Meno argues that, after Paragraph 9, "there is no further mention of 'college' and who will pay for it." *Id.* Meno further argues that A.J.S.M. is not mentioned by name in Paragraph 11, while the other two children and their schools are named. *Id.* at 7.

Additionally, Meno raises that many of the expenses that Sterne seeks compensation for are "absurd and outrageous," and not contemplated in the MSA. *Id.* at 3. For example, Meno cites to a $3,500 charge for a used Subaru in Colorado and argues that this is not the type of expense that Meno agreed to pay. *Id.* at 5.

The Court finds that both parties' arguments contain merit, but that none of the arguments are decisive regarding the meaning of Paragraph 11. First, Sterne's argument that the term "minor children" is used in Paragraph 8 and Paragraph 10, but not Paragraph 11 is potentially persuasive that Paragraph 11 intentionally omitted the term "minor children." However, by the same logic, Meno's argument that Paragraph 9 mentioned "college," but that Paragraph 11 did not is equally persuasive that Paragraph 11 intentionally excluded college expenses. Further, Meno's position that Paragraph 11 named two of the children of the marriage, but did not name A.J.S.M., the only adult child at the time the MSA was signed, is further persuasive that Paragraph 11 did not contemplate college tuition or expenses.

Additionally, the Court is not persuaded by Sterne's argument that Paragraph 11 unambiguously includes the children of the marriage into adulthood, but limited to while they are in college. Paragraph 11 does not contain any language discussing the expiration for the parents to provide tuition, medical costs, and other expenses for the children. The fact that Paragraph 9 limits providing medical and dental insurance to the adult children of the marriage while in college does not necessarily indicate that Paragraph 11 has the same intention. In fact, as noted previously, the fact that Paragraph 9 mentions college may imply that Paragraph 11 intentionally omitted any reference to the children while in college.

Finally, it is also not decisive that the MSA contemplates that the parties must support their adult children simply because the MSA lists the three children of the marriage at Paragraph 2(e) and 2(f), and that one of the children of the marriage was already an adult when the MSA was signed. Accepting that reasoning would produce the absurd result that the parties must pay for all tuition costs, medical costs, and other expenses for the children of the marriage indefinitely throughout their adult lives.

On its face, Paragraph 11 has multiple plausible meanings, including that it may or may not contemplate tuition and other expenses for the children of the marriage after they reach adulthood. Additionally, whether the MSA contemplates adult children or not, it is not clear on the face of the MSA what "other expenses" includes. For example, "other expenses" may or may not include an automobile. The parties have not provided the Court with any clear arguments or legal citation to support their positions regarding the issue of what constitutes "other expenses." Thus, the Court is unable to determine the intention of the parties within the four corners of the MSA. Because the Court finds Paragraph 11 ambiguous, the Court shall consider extrinsic evidence to interpret the ambiguity in Paragraph 11. *Wasson,* 2007 Guam 16 at ¶ 16 (finding a court may resort to extrinsic evidence to determine the intention of the parties when a contract is ambiguous).

Although the parties have submitted some extrinsic evidence regarding the interpretation of Paragraph 11, Attorney McDonald requested to introduce additional extrinsic evidence if the Court finds Paragraph 11 ambiguous. Min. Entry, 3:03 PM (May 23, 2024). Attorney Woodley did not oppose. For the reasons set forth above, the Court finds that Paragraph 11 of the MSA is ambiguous and that extrinsic evidence and further arguments, as applicable, are necessary to resolve the ambiguity.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Sterne's Amended Motion for OSC, in part, finding that Meno committed contempt of court when he willingly failed to abide by the terms of the MSA requiring him to pay the Debt of his vehicle and provide dental insurance to the children of the marriage who are minors or in college. Accordingly, the Court **ORDERS** the following:

1.     Meno shall immediately comply with all of the provisions of the MSA, including:

15

a. Meno shall pay the Debt on his vehicle pursuant to the MSA, either by obtaining a loan or making payments as the payments become due.

b. Meno shall provide dental insurance to the children of the marriage who are minors or in college.

2. Meno shall reimburse Sterne for any costs incurred as a result of his contempt, including:

a. Meno shall reimburse Sterne for any payments that she has made on the Debt for Meno's vehicle. Within fifteen (15) days of this Order, Sterne shall file a Statement of Costs which details the payments that she has made on the Debt for Meno's vehicle as well as the outstanding balance of the Debt. Fifteen (15) days after Sterne files her Statement of Costs, Meno may file a response regarding the Statement of Costs. Five (5) days after Meno files his response, Sterne may file a reply.

b. Meno shall reimburse Sterne for her costs incurred to provide dental insurance to the children of the marriage since the MSA took effect. Within fifteen (15) days of this Order, Sterne shall file a Statement of Costs outlining the payments she has made to provide dental insurance for the children of the marriage and shall include documented support for the payments, as applicable. Fifteen (15) days after Sterne files her Statement of Costs, Meno may file a response regarding the Statement of Costs. Five (5) days after Meno files his response, Sterne may file a reply.

3. A Status Hearing shall be held in this matter on **October 10, 2024 at 9:30 a.m.**

**SO ORDERED:** ___AUG 2 2 2024___

_____
**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam

16